JAMES B. ALLEY and Another, Suing as Stockholders of THE POSI-
TYPE CORPORATION OF AMERICA, and on Behalf of All the
Stockholders in a Like Situation, and on Behalf of Said THE
POSITYPE CORPORATION OF AMERICA, Respondents, *v.* THE
POSITYPE CORPORATION OF AMERICA and Others, Appellants,
Impleaded with ARCHIE S. WOODS and Others, as Trustees, etc.,
Defendants, and PHOTOMATON, INC., Respondent. (Action No. 1
— Appeals Nos. 2792, 2793, 2798, 2799.)

JAMES B. ALLEY and Another, Respondents, *v.* THE POSITYPE
CORPORATION OF AMERICA and Others, Appellants, Impleaded
with ARCHIE S. WOODS and Others, as Trustees, etc., Defendants,
and PHOTOMATON, INC., Respondent. (Action No. 2 — Appeals
Nos. 2794, 2795, 2800.)

ROBERT J. BULKLEY and Others, Suing on Behalf of Themselves
and as Stockholders of THE POSITYPE CORPORATION OF AMERICA,
and on Behalf of All Other Stockholders, and on Behalf of Said
THE POSITYPE CORPORATION OF AMERICA, Respondents, *v.*
THE POSITYPE CORPORATION OF AMERICA and Others, Defendants,
Impleaded with THE POSITYPE CORPORATION OF AMERICA and
Another, Appellants. (Action No. 3 — Appeals Nos. 2796, 2801.)

ROBERT J. BULKLEY and Another, Respondents, *v.* THE POSITYPE
CORPORATION OF AMERICA and Others, Defendants, Impleaded
with THE POSITYPE CORPORATION OF AMERICA and Others,
Appellants. (Action No. 4 — Appeals Nos. 2797, 2802.)

First Department, December 7, 1928.

*R. Randolph Hicks* of counsel [*Thomas F. Compton* with him on the brief; *Satterlee & Canfield*, attorneys], for the appellants.

*Enos Throop Geer* of counsel [*James B. Alley* with him on the brief; *Alley & Geer*, attorneys], for the plaintiffs, respondents.

*Alfred Jaretzki, Jr.*, of counsel [*Sullivan & Cromwell*, attorneys], for the respondent Photomaton, Inc.

MARTIN, J.  Appeal No. 2792.  This is a representative action by minority stockholders of The Positype Corporation of America, a Delaware corporation.  The plaintiffs seek a decree requiring voting trustees to dissolve the voting trust and, as voting trustees and trustees under a stock deposit agreement, to deliver shares of stock of the corporation to defendant Photomaton, Inc., a New York corporation, on its payment therefor in accordance with exercised option.

It appears from the complaint that The Positype Corporation was organized pursuant to an agreement between the plaintiff Robert J. Bulkley and defendant Henry G. Bulkley, parties of the first part, and John Markle and Arthur J. Morris, parties of the second part, which provided that a block of stock would be held in a voting trust for ten years under agreements giving the parties of the first part and the parties of the second part equal voice in the control of the corporation.  Several years later a second agreement was made, which provided for the designation by Markle of nine out of eleven directors of The Positype Corporation, the other two to be nominated by Henry G. Bulkley, and which also provided for the execution of a contract with the defendant Photomaton, Inc.  That company, the complaint discloses, was, according to the new arrangement, to purchase the output of The Positype Corporation for a term of years and to have an option to purchase thirty-three and a third per cent of the total authorized common stock of The Positype Corporation at five dollars per share, the option to be exercised within three . years after the date of the contract, The Positype Corporation representing that, at the date of the agreement with Photomaton, Inc., there was an agreement by which Henry G. Bulkley, Robert J. Bulkley and John Markle agreed to supply the common stock to be delivered pursuant to said option.

It is alleged that, prior to the execution of the agreement containing said option, it was brought to the attention of the acting voting trustees that voting trust certificates would not be good delivery of stock pursuant to the option, and that thereupon the voting trustees adopted this resolution: " Further resolved that the voting trustees on advice of counsel, shall take whatever action may be necessary to supply the Photomaton Corporation with the common stock on which it is hereby given an option in accordance with a certain contract between The Positype Corporation, Photomaton Corporation, and Mr. John Markle."

The complaint sets forth that the contract between the two corporations, which contained the option, was executed in reliance on said resolution.  It is alleged that Photomaton, Inc., duly

elected to take the stock and is willing and able to take and pay for it.

The purpose of what is further set forth in the complaint is to make it appear that delivery of stock, as distinguished from voting trust certificates, to Photomaton, Inc., can be accomplished only by dissolving the voting trust, which course the defendant Woods, one of the voting trustees, refuses to adopt, it appearing that unanimous action of the trustees is necessary for its dissolution.

It is set forth that the contract with Photomaton, Inc., is a most important asset of The Positype Corporation and is placed in jeopardy by the failure to terminate the voting trust and thus make it possible to deliver the stock to which Photomaton, Inc., is entitled under the option, inasmuch as that company might refuse, by reason of the failure to deliver the stock to it, to take the output of The Positype Corporation.

It is also alleged that Woods, as president of The Positype Corporation, has notified Photomaton, Inc., that it is impossible to make delivery pursuant to the option, although he is the trustee who refuses to vote for the dissolution of the voting trust; and that his purpose is to wrongfully perpetuate personal control of The Positype Corporation, he being a representative of John Markle.

Finally the complaint indicates that the plaintiffs on more than one occasion demanded of the directors of The Positype Corporation that they take such action as might be necessary to compel the voting trustees to dissolve the voting trust in order that there might be delivery of the stock to Photomaton, Inc.; that no steps to that end have been taken and that such requests were futile because of the control of the board of directors by Woods.

The prayer for relief is to the effect that the voting trustees be required to dissolve the voting trust and that the option agreement be carried out, a temporary injunction being also sought enjoining and restraining the voting trustees, pending the determination of the action, from voting the stock deposited under the voting trust agreement.

This complaint rests on the assumption that the resolution of the voting trustees, quoted above, affords the only means of taking stock from the voting trust.

No cognizance is taken of the fact that sufficient stock may be released from it by agreement. It disregards as well the condition on which Markle joined the Bulkleys in forming The Positype Corporation, which condition was carried into the arrangement between them when control of the corporation was turned over to Markle by giving him the nomination of nine out of eleven directors.

Whatever may be said as to the effect on corporate control of taking out of the voting trust sufficient stocks to fulfill the option, it must be remembered that this action is an appeal to justice and conscience. It is argued that according to the complaint the suit is brought to enforce, in equity, a contract made for the benefit of stockholders, whereas it is apparent on the face of the pleading that the purpose is to terminate the voting trust despite the agreements with Markle.

On the allegations of the complaint it must be assumed that there was good and sufficient reason existing for giving Markle control of the corporation and for his insisting on the voting trust agreement.

The pleading does not indicate that plaintiffs have sought to accomplish the desired result by consenting to release from the voting trust such a block of stock as, with that now available, would be sufficient to make full delivery to Photomaton, Inc. With this missing, the action appears to be a device to break the contract with Markle.

While the voting trustees agreed to take whatever action was necessary to supply Photomaton, Inc., with stock under the option, it would appear not to be necessary to dissolve the voting trust until a sincere effort had been made to accomplish the same result by releasing a sufficient number of shares. Dissolution of the voting trust, according to plaintiff, is the only legal method of accomplishing delivery to Photomaton, Inc. This, however, is a conclusion which does not follow from what has been alleged. If such, were the only method of acquiring the necessary stock, it would have been simple enough for the resolution to indicate that dissolution was contemplated. Instead of this, it merely calls for whatever action might be necessary.

The complaint shows the action is an attempt in equity to bring about a very inequitable result, a method of breaking the contract with Markle under the guise of an alleged corporate necessity, the existence of which is not shown by the pleading.

Furthermore it appears from the exhibits attached to the complaint that when the new arrangement was made between Bulkley and Markle, giving Markle the designation of nine out of eleven directors, the affairs of the corporation had reached a critical condition; that " there was not on deposit sufficient funds to meet current obligations nor sufficient orders on the books of the corporation to insure its future."

From Exhibit " B " attached to the complaint it appears that at the time referred to Markle surrendered to the corporation $312,500 of its debentures. It is apparent from the pleading

that, if advantage was to be taken of the opportunity to have Photomaton, Inc., buy The Positype Corporation's product, it was necessary to make a new arrangement by which The Positype Corporation would be freed from the critical situation into which it had come.

After Markle performed on his part and the corporation was enabled to proceed with the Photomaton, Inc., contract, including the sale of all of the entire product of The Positype Corporation to Photomaton, Inc., for several years, it is now sought by this action to break the agreement with Markle.

The order denying the motion to dismiss the complaint for insufficiency should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

Appeal No. 2793 is in action No. 1. The counterclaim rests on the same ultimate basis as the complaint which we are holding to be insufficient. The order should be reversed, with ten dollars costs and disbursements, and the motion to dismiss the counterclaim for insufficiency should be granted, with ten dollars costs.

Appeal No. 2798 is in action No. 1 and is an appeal from an order granting Photomaton, Inc., a preliminary injunction. The order should be reversed, with ten dollars costs and disbursements, and the motion should be denied, with ten dollars costs.

Appeal No. 2799 is in action No. 1 and is an appeal from an order granting plaintiffs an injunction *pendente lite*. The injunction falls with the complaint, which on another appeal we are holding to be insufficient. In addition to the complaint we now have before us the affidavits which were filed in support of the motion for an injunction as well as the opposing affidavits. It appears on behalf of Markle that he is and has been willing to have the voting trust release sufficient stock to make full delivery of shares of stock to Photomaton, Inc. The order should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

Appeal No. 2794 is in action No. 2. The order should be reversed, with ten dollars costs and disbursements, and the motion to dismiss for insufficiency should be granted, with ten dollars costs.

Appeal No. 2795 is in action No. 2. The order should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

Appeal No. 2800 is in action No. 2. It is an appeal from an order granting a temporary injunction. The order should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

Appeal No. 2796 is in action No. 3. This is an appeal from

the denial of a motion to dismiss the complaint for insufficiency. It appears from the pleading that the suit is brought by a stockholder for the protection of The Positype Corporation, the purpose being to enjoin the alleged unnecessary and fraudulent disclosure of secret and unpatented processes and formulas forming the principal assets of the corporation.

The complaint is to the effect that the processes and formulas were developed by Henry G. Bulkley and it is a necessary inference from what is alleged that Markle financed the discoveries of Bulkley under an arrangement by which they were to have an equal control of the corporation; that the arrangement, on account of the project not having proved successful, was changed in 1925, at which time Markle was given the designation of nine out of eleven directors; and that it was provided, ultimately, that defendant Sinclair, a nominee of Markle, be instructed in the use of the secret formulas and processes, which was done. It appears that while the formulas were made available to any two of several of the officers and directors, provision was made against further disclosure of processes to any one but Sinclair.

The complaint further alleges that the board of directors in the control of Woods, Markle's representative, passed a resolution to the effect that full knowledge of the secret processes be communicated to Woods, the president. It is alleged that such a disclosure will result in a sacrifice of corporate interests by unnecessary divulgence of its secret formulas which constitute its principal asset. According to the complaint, though Sinclair has scrupulously performed his duties, Woods, without cause, against the welfare of the corporation and solely for the purpose of creating a necessity for disclosure of the processes to himself, attempted to discharge Sinclair.

Plaintiffs seek an injunction restraining divulgence of the formulas to Woods. The fair intendment of the complaint is to the effect that, according to the arrangements made between the Bulkley interests and the Markle interests without necessity there is to be no additional disclosure of the formulas. Otherwise we would not find it implied that only one additional person, ultimately determined to be Sinclair, should receive information as to the secrets; nor would we find provision being made that the right to read the formulas should be confined to Bulkley and the person chosen by the trustees, Sinclair.

Markle having nine out of the eleven directors, the provision implying concealment as to the formulas would have been entirely without purpose if his board could without necessity, at any time,

require disclosure to Woods or to whomsoever the directors might designate.

In Exhibit " A " to the complaint we find that " Mr. Markle agrees that his nominees to be elected to the board of directors are to be bound to carry out the terms of this agreement, and guarantees that they will take such action as may be necessary to carry it out."

The appellants argue that an employee cannot enforce a contract for service by enjoining its breach. This doctrine has no application in the present situation. It is merely incidental that plaintiff wants Sinclair retained. The allegations make it appear that the attempt to discharge him is merely an excuse for failing to carry out the agreement for secrecy. Appellants' argument would have the effect of rendering the agreement a mere device or subterfuge to spread the information contrary to the evident intent of the contract itself.

Moreover, the agreement was not to be abrogated at the will of Markle or his representative on the theory that a corporation is to be managed by its board of directors, which has a right to hire and discharge employees. In proceeding under the contract the corporation accepted its benefits and is bound by it.

On the face of the complaint it appears that, so far as the parties are concerned, the agreements were fundamental and the corporation merely a means adopted to carry them out, it also being made to appear that the parties themselves considered further and unnecessary disclosure a danger to the corporation which the action seeks to protect.

The motion to dismiss the complaint for insufficiency was properly denied. The order should be affirmed, with ten dollars costs and disbursements, with leave to defendants, appellants, to answer within twenty days on payment of said costs.

Appeal No. 2801 is in action No. 3. This is an appeal from an order granting an injunction *pendente lite*. Attacking the order granting it, defendants place emphasis on the opposing affidavits. They indicate that, when The Positype Corporation was first formed, its then president, one Ingersoll, was to be allowed to familiarize himself with the secret processes and that, in 1922, the board of directors gave authority for Markle's becoming informed as to them. All of this seems to have been known at the time of the agreement pursuant to which Sinclair was chosen as the only person to whom further disclosure of the secrets would be made.

It is also averred that he has been disloyal to the corporation in that, contrary to the wishes of the board of directors, he assisted certain persons who - desired to obtain excerpts from corporate

records. Accordingly, it is said he is of proved unreliability and was properly dismissed.

The opposing affidavits do not show sufficient reason for virtually abrogating the agreement of 1925. The ultimate outcome will depend upon a fuller disclosure of the facts at the trial.

At the present time it seems improper, pending the trial, to allow any of the parties to proceed in disregard of the evident intention to preserve the formulas from further disclosure. Furthermore, in the last analysis it would appear that those relying upon an alleged right to discharge Sinclair must justify their course, in view of all the circumstances. Otherwise, they would have the power to break any agreement at will.

The order granting an injunction *pendente lite* should be affirmed, with ten dollars costs and disbursements.

Appeal No. 2797 is in action No. 4. The order denying the motion to dismiss the complaint should be affirmed, with ten dollars costs and disbursements, with leave to the defendants, appellants, to answer within twenty days upon payment of said costs.

Appeal No. 2802 is in action No. 4. It is an appeal from an order granting a temporary injunction restraining the divulgence of secret processes of The Positype Corporation. The order should be affirmed, with ten dollars costs and disbursements.

DOWLING, P. J., FINCH, McAVOY and O'MALLEY, JJ., concur.

In action No. 1. On each appeal (Nos. 2792 and 2793): Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs; (Nos. 2798 and 2799): Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.

In action No. 2. On each appeal (Nos. 2794 and 2795): Order reversed, with ten dollars costs and disbursements and motion granted, with ten dollars costs; (No. 2800): Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.

In action No. 3. (Appeal No. 2796): Order affirmed, with ten dollars costs and disbursements, with leave to the defendants, appellants, to answer within twenty days from service of order upon payment of said costs. (Appeal No. 2801): Order affirmed, with ten dollars costs and disbursements.

In action No. 4. (Appeal No. 2797): Order affirmed, with ten dollars costs and disbursements, with leave to the defendants, appellants, to answer within twenty days from service of order upon payment of said costs. (Appeal No. 2802): Order affirmed, with ten dollars costs an ddisbursements.